## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ABINGDON DIVISION

| | | |
|---|---|---|
| **GARY BLACKWELL,** | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:09cv00066 |
| | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | By:   PAMELA MEADE SARGENT |
| Defendant. | ) | UNITED STATES MAGISTRATE JUDGE |

*I.  Background and Standard of Review*

The plaintiff, Gary Blackwell, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claim for disability insurance benefits, ("DIB"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 423 (West 2003 & Supp. 2010).  Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B).  As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards.  *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."

-1-

*Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Blackwell filed his application for DIB on February 5, 2004, alleging disability as of April 27, 2003, based on perforated diverticulitis, sigmoid colectomy, appendectomy, pain and swelling of the prostate, leg and back pain, bilateral leg edema and hernia repair. (Record, ("R."), at 83-85, 114-15, 144.) The claim was denied initially and upon reconsideration. (R. at 74-76, 79-82.) Blackwell then requested a hearing before an administrative law judge, ("ALJ"). (R. at 43.) The ALJ held a hearing on October 25, 2005, at which Blackwell was represented by counsel. (R. at 1015-55.)

By decision dated January 27, 2006, the ALJ denied Blackwell's claim. (R. at 48-54.) After the ALJ issued his decision, Blackwell pursued his administrative appeals, and the Appeals Council remanded his case for reevaluation. (R. at 56-57, 62-69.) The ALJ held a hearing on September 22, 2008,[1] at which Blackwell was represented by counsel. (R. at 1061-1109.)

By decision dated October 24, 2008, the ALJ again denied Blackwell's claim. (R. at 13-24.) The ALJ found that Blackwell met the nondisability insured status requirements of the Act for DIB purposes through December 31, 2008. (R. at 15.) The

---

[1]A hearing was scheduled for April 3, 2008, but it was determined that medical evidence from the Veterans Administration Medical Center, ("VAMC"), was missing from the file. Thus, the hearing was continued. (R. at 1056-60.)

ALJ also found that Blackwell had not engaged in substantial gainful activity since April 27, 2003. (R. at 16.) The ALJ found that the medical evidence established that Blackwell suffered from severe impairments, namely Crohn's disease, a back disorder and obesity, but he found that Blackwell did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 16, 18.) The ALJ also found that Blackwell had the residual functional capacity to perform sedentary work[2] that allowed a sit/stand option, the opportunity for a 10- to 15-minute break every two hours and allowed up to two absences a month. (R. at 19.) The ALJ found that Blackwell could occasionally bend, stoop or kneel, frequently reach, but never climb ladders, ropes or scaffolds, crawl, work around hazards at unprotected heights, dangerous machinery or other hazards or drive automobiles as part of his job duties. (R. at 19.) The ALJ found that Blackwell was unable to perform any of his past relevant work. (R. at 22.) Based on Blackwell's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that jobs existed in significant numbers in the national economy that Blackwell could perform, including those of an assembly worker, a binder and a call-out operator. (R. at 22-23.) Thus, the ALJ found that Blackwell was not under a disability as defined under the Act and was not eligible for benefits. (R. at 23-24.) *See* 20 C.F.R. § 404.1520(g) (2010).

---

[2]Sedentary work involves lifting items weighing up to 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. *See* 20 C.F.R. § 404.1567(a) (2010).

After the ALJ issued his decision, Blackwell pursued his administrative appeals, but the Appeals Council denied his request for review. (R. at 5-9, 993.) Blackwell then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981 (2010). This case is before the court on Blackwell's motion for summary judgment filed May 20, 2010, and on the Commissioner's motion for summary judgment filed June 22, 2010.

## *II. Facts*

Blackwell was born in 1969, (R. at 83), which classifies him as a "younger person" under 20 C.F.R. § 404.1563(c). He has a high school education, training in computer entry and weapons training. (R. at 120-21.) Blackwell has past relevant work experience as a fast food worker, a sales representative of mining-related equipment, a heavy equipment purchasing agent, a truck driver, a customer service representative and a bridge repair construction worker. (R. at 115, 1051.) At his hearing, Blackwell testified that his medication caused drowsiness. (R. at 1037.) He stated that he could stand up to 20 minutes without interruption and that he could not lift objects. (R. at 1040.)

James Williams, a vocational expert, was present and testified at Blackwell's 2005 hearing. (R. at 1048-54.) Williams classified Blackwell's past work as a fast food worker as light[3] and unskilled. (R. at 1051.) He classified Blackwell's past work as a mining equipment and heavy equipment sales representative and as a customer

---

[3]Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If an individual can do light work, he also can do sedentary work. *See* 20 C.F.R. § 404.1567(b) (2010).

service representative as semiskilled and light. (R. at 1051.) Blackwell's past work as a heavy equipment purchasing agent was classified as semiskilled and sedentary. (R. at 1051.) His past work as a truck driver was classified as semiskilled and medium.[4] (R. at 1051.) Blackwell's past work as a bridge repair construction worker was classified as semiskilled and heavy,[5] and his work as a material handler was classified as unskilled and heavy. (R. at 1051.)

Williams was asked to assume a hypothetical individual of Blackwell's age, education and work history who had the residual functional capacity as indicated by state agency physician, Dr. Richard M. Surrusco, M.D., which indicated that Blackwell could perform sedentary work. (R. at 548-56, 1051-53.) Williams stated that such an individual could perform Blackwell's past work as a heavy equipment purchasing agent. (R. at 1053.) Williams was asked to consider the same individual who was limited as indicated by Dr. Brian Maggard, M.D. (R. at 581-85, 1053-54.) Williams stated that such an individual could perform Blackwell's past work as a heavy equipment purchasing agent. (R. at 1053-54.) When asked to consider an individual who experienced pain to the degree that it interfered with his ability to do normal activities of daily living, whose medications caused him to sleep the majority of the day, who was so restricted in his abilities to maintain attention, concentration, persistence or pace that he was unable to attend to the tasks at hand, who had difficulties with sitting and standing and who was unable to lift or carry items without

---

[4]Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of items weighing up to 25 pounds. If an individual can do medium work, he also can do sedentary and light work. *See* 20 C.F.R. § 404.1567(c) (2010).

[5]Heavy work involves lifting objects weighing up to 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. If someone can do heavy work, he also can do medium, light and sedentary work. *See* 20 C.F.R. § 404.1567(d) (2010).

substantially increasing his pain, Williams stated that there would be no jobs available that such an individual could perform.  (R. at 1054.)

Reverend William Michael Stump also was present and testified at Blackwell's 2005 hearing.  (R. at 1090-94.)  Stump stated that he had known Blackwell for eight years.  (R. at 1090.)  He stated that Blackwell appeared to be more irritable and easily upset.  (R. at 1094.)  Stump stated that Blackwell had to leave a church service because he would get nervous around a crowd of people.  (R. at 1093.)

Medical expert, Ward Stevens, also was present and testified at Blackwell's 2005 hearing.  (R. at 1089.)  He stated that the evidence did not show that Blackwell met or equaled a listed impairment.  (R. at 1089.)

Vocational expert, Olen Dodd, was present and testified at Blackwell's 2005 hearing.  (R. at 1099-1107.)  Dodd was asked to consider an individual of Blackwell's age, education and work history, who had the residual functional capacity to lift and carry items weighing up to 20 pounds, to occasionally lift and carry items weighing up to  10 pounds and, on more than general occasion, but not frequently, to lift and carry items weighing up to five pounds, who required a sit/stand option, who required a 10- to 15-minute break at two-hour intervals and who would be absent from work two times a month.  (R. at 1105-06.)  The ALJ added that the individual should not climb, but that he could climb stairs on entering or exiting the place of employment.  (R. at 1106.)  The individual could not crawl, could occasionally bend, stoop or kneel and more frequently reach.  (R. at 1106.)  The individual could not work at heights, around dangerous machinery or other hazards and could not drive an automobile in

doing work activities. (R. at 1106.) Dodd stated that there would be a significant number of sedentary jobs available that such an individual could perform, including jobs as an assembly worker, a bonder and a call-out operator. (R. at 1106.) When asked if the individual suffered from an emotional condition that would interfere with concentration, persistence or pace for up to 30 percent of the time, Dodd testified that no jobs would be available for such an individual. (R. at 1107.)

In rendering his decision, the ALJ reviewed records from Dr. Emile Khuri, M.D.; Princeton Community Hospital; Dr. David A. Mullins, M.D.; Dr. Arthur T. Wyker, M.D.; Dr. Ravindra Murthy, M.D.; Dr. Richard M. Surrusco, M.D., a state agency physician; Dr. Randall Hays, M.D., a state agency physician; Dr. Mary A. Smith, M.D.; Dr. Brian L. Maggard, M.D.; Veterans Administration Medical Center; Tug River Health Associates; Dr. David R. Carr, D.O.; and Tazewell Community Hospital.[6] Blackwell's attorney submitted additional medical reports from Tazewell Community Hospital and Dr. Mullins to the Appeals Council.[7]

The record shows that Blackwell saw Dr. Emile Khuri, M.D., from April 29, 2003, through June 3, 2003. (R. at 205-20.) On May 6, 2003, Dr. Khuri performed a colonoscopy, which showed diverticulosis. (R. at 205, 217.) A CT scan of Blackwell's abdomen and pelvis was normal. (R. at 216.) On May 14, 2003, Dr. Khuri performed a laparoscopy, exploratory laparotomy and appendectomy. (R. at 212-13.) Blackwell

_____

[6]The record contains medical reports from Twin County Regional Hospital. However, these reports pertain to another individual. (R. at 191-203.)

[7]Since the Appeals Council considered this evidence in reaching its decision not to grant review, (R. at 5-9), this court also should consider this evidence in determining whether substantial evidence supports the ALJ's findings. *See Wilkins v. Sec'y of Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991).

was discharged on May 20, 2003, with a diagnosis of abdominal pain, healing acute appendicitis with inflammatory mass, diverticulosis and obesity. (R. at 226.)

After being informed that he might need further surgery, Blackwell sought a second opinion from Dr. David A. Mullins, M.D. (R. at 240.) A CT scan revealed sigmoid diverticulitis that had displaced to the right lower quadrant. (R. at 240.) This CT scan further revealed that Blackwell retained his appendix despite the prior attempted appendectomy. (R. at 240.) On July 11, 2003, Blackwell underwent a sigmoid resection and appendectomy, and the operative findings included sigmoid colon, which was impinged upon the right anterior abdominal wall with a localized abscess. (R. at 221-25, 343-54.) Upon discharge on July 17, 2003, the abscess appeared to be resolved, and Blackwell was diagnosed with diverticulitis. (R. at 221.) On July 21, 2003, Blackwell reported that he felt better. (R. at 445.) On August 14, 2003, Dr. Mullins noted that Blackwell appeared to be doing very well. (R. at 444.) His incision had healed well, and there was no evidence of incisional hernia, abscess, drainage or other abnormality. (R. at 444.) Dr. Mullins stated, "I think that he is stable to return to work in another week and I will follow him, as needed." (R. at 444.) On September 3, 2003, Blackwell reported that he was able to do most everything that he wished to do. (R. at 443.) Dr. Mullins released Blackwell to return to work. (R. at 443.) Dr. Mullins noted that, following Blackwell's office visit, he received a telephone call from Blackwell's wife requesting that Blackwell be off work for an additional two weeks. (R. at 443.) Dr. Mullins did not object due to Blackwell's recent surgery, but stated "at some point we are going to have to consider returning back to work, and in fact there most likely will not be a medical reason why he has to continue to be off work." (R. at 443.)

On October 27, 2003, a CT scan of Blackwell's abdomen and pelvis showed no evidence of gallstones or kidney stones. (R. at 544.) There were no focal masses in the upper abdomen, no evidence of hepatosplenomegaly and no radiographic evidence of acute diverticulitis. (R. at 544.)

On March 2, 2004, a CT scan of Blackwell's abdomen and pelvis showed a normal abdomen and a few diverticula in the sigmoid area. (R. at 572.) On March 9, 2004, Dr. Mullins performed an umbilical hernia repair. (R. at 568-69.) On March 29, 2004, Blackwell reported that he was doing well and that he did not have significant discomfort. (R. at 600.) On April 29, 2004, Dr. Mullins performed a colonoscopy, which showed no evidence of stenosis or other abnormality. (R. at 566-67.) On July 14, 2004, Blackwell complained of swelling of the right side of his umbilicus. (R. at 593-94.) A CT scan of Blackwell's abdomen showed no evidence of a hernia, and Dr. Mullins was unable to delineate a hernia on physical examination. (R. at 593.) Blackwell was urged to lose weight. (R. at 593.) Dr. Mullins reported that the best option was observation and for Blackwell to continue normal activities. (R. at 593.) On July 23, 2007, Blackwell complained of abdominal pain. (R. at 631-32.) He weighed 313 pounds. (R. at 631.) Blackwell was in no acute distress. (R. at 632.) Dr. Mullins found no evidence of a recurrent incisional or inguinal hernia, and he advised Blackwell that his obesity put him at high risk for recurrent hernias. (R. at 632.) On August 6, 2007, a CT scan of Blackwell's abdomen showed both gallstones and inflammatory changes of his terminal ileum. (R. at 1010.) Blackwell complained of intermittent abdominal pain and a moderate amount of diarrhea. (R. at 1009.) Blackwell was in no acute distress, and he was alert and oriented. (R. at 1010.) Blackwell weighed 313 pounds. (R. at 1010.) On August 9, 2007, a colonoscopy

showed inflammatory changes of the terminal ileum, minimal residual diverticular disease and internal hemorrhoids.  (R. at 633, 1012.)  On August 27, 2007, Blackwell reported that overall he was "doing better."  (R. at 626.)  He reported that he had not taken any medications since the colonoscopy, and that his diarrhea had resolved.  (R. at 626.)  Blackwell was in no acute distress.  (R. at 626.)

On October 24, 2007, Blackwell was admitted to the hospital for exacerbation of Crohn's disease.[8]  (R. at 648-60.)  He was discharged on October 26, 2007.  (R. at 648.)  On January 21, 2008, a CT scan of Blackwell's abdomen and pelvis showed possible inflammatory changes involving a segment of the terminal ileum with no evidence of proximal obstruction, which could be from focal involvement of Crohn's disease.  (R. at 759.)

Blackwell saw Dr. Ravindra Murthy, M.D., from November 20, 2003, through February 19, 2004, for complaints of abdominal pain.  (R. at 510-27.)  On January 8, 2004, Blackwell reported that medication partially relieved his abdominal pain.  (R. at 512.)  Dr. Murthy reported that Blackwell's symptomatology was stable. (R. at 512.)  An excretory urogram performed on February 19, 2004, showed no evidence of urinary calculi or obstructive uropathy, and a small amount of residual contrast was noted in the bladder.  (R. at 526-27.)

---

[8]Crohn's disease is a chronic granulomatous inflammatory disease of unknown etiology, involving any part of the gastrointestinal tract, but commonly involving the terminal ileum with scarring and thickening of the bowel wall. Crohn's disease frequently leads to intestinal obstruction and fistula and abscess formation and has a high rate of recurrence after treatment. *See* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY, ("Dorland's"), 484 (27th ed. 1988.)

Blackwell saw Dr. Mary A. Smith, M.D., from November 16, 2001, through June 2, 2004, for abdominal pain, urinary incontinence and bilateral lower extremity edema. (R. at 528-32, 557-58.) On September 10, 2003, Blackwell was diagnosed with pneumonia. (R. at 546.) On November 25, 2003, a doppler sonogram of Blackwell's right and left extremity veins showed normal deep veins. (R. at 543.) On June 2, 2004, Blackwell complained of stress and low back pain. (R. at 557.) He denied nausea, vomiting and diarrhea. (R. at 557.) Dr. Smith reported that Blackwell's hypertension was uncontrolled, and he initiated Cozaar. (R. at 557.) On July 13, 2004, a CT scan of Blackwell's abdomen and pelvis was normal. (R. at 562.)

On February 4, 2004, Blackwell saw Dr. Arthur T. Wyker, M.D., with complaints of incontinence and bilateral leg edema. (R. at 499-500.) Blackwell's lower extremities revealed two to three + pitting edema, with the right greater than the left. (R. at 500.) Dr. Wyker believed that some of Blackwell's problems could be medication-induced or some inadvertent effect on his bladder secondary to surgery. (R. at 500.)

On May 3, 2004, Dr. Richard M. Surrusco, M.D., a state agency physician, indicated that Blackwell had the residual functional capacity to perform a limited range of light work. (R. at 548-56.) He indicated that Blackwell could stand and/or walk at least two hours in an eight-hour workday. (R. at 549.) Dr. Surrusco indicated that Blackwell's ability to push and/or pull was limited in his lower extremities. (R. at 549.) He indicated that Blackwell could occasionally climb, balance, stoop, kneel, crouch and crawl. (R. at 552.) No manipulative, visual, communicative or environmental limitations were noted. (R. at 552-54.) This assessment was affirmed

by Dr. Randall Hays, M.D., another state agency physician, on August 19, 2004. (R. at 556.)

Blackwell saw Dr. Brian L. Maggard, M.D., from June 28, 2004, through March 7, 2006, for abdominal pain, low back pain, hypertension and ventral hernia. (R. at 574-92, 603-23.) On July 12, 2004, Blackwell reported that his abdominal pain was worsening. (R. at 591.) He stated that he had "been very busy." (R. at 591.) On July 13, 2004, a CT scan of Blackwell's abdomen and pelvis was normal. (R. at 577.) On July 27, 2004, Blackwell reported low back and bilateral rib pain after falling at a swimming pool. (R. at 576.) Blackwell complained of tenderness of the lumbar spine and lower ribs. (R. at 576.) A straight leg raising test was negative bilaterally. (R. at 576.) He was diagnosed with lumbar strain and bilateral rib pain. (R. at 576.) On August 27, 2004, Blackwell complained of abdominal pain. (R. at 575.) He had full range of motion of the extremities. (R. at 575.) With the exception of a two-centimeter hernia above the umbilicus, the abdominal examination was benign. (R. at 575.) He was diagnosed with an umbilical hernia and abdominal pain. (R. at 575.) On September 8, 2004, Dr. Maggard reported that Blackwell had no clubbing, cyanosis or edema of the extremities. (R. at 574.) He diagnosed abdominal pain and a ventral hernia. (R. at 574.)

On October 11, 2004, Dr. Maggard completed a physical assessment indicating that Blackwell could occasionally lift and carry items weighing up to 10 pounds and that he could frequently lift and carry items weighing less than 10 pounds. (R. at 581-84.) He reported that Blackwell could stand and/or walk less than two hours in an eight-hour workday. (R. at 581.) Dr. Maggard reported that Blackwell's ability to push

and/or pull was limited in his upper and lower extremities due to multiple hernias with abdominal pain. (R. at 582.) He reported that Blackwell could occasionally balance and never climb, kneel, crouch, crawl or stoop. (R. at 582.) Dr. Maggard reported that Blackwell could occasionally reach and handle and frequently finger and feel. (R. at 583.) Dr. Maggard found that Blackwell could not work around temperature extremes, noise, dust, vibration, humidity/wetness, hazards or fumes, odors, chemicals and gases, as these could exacerbate his pain and illnesses. (R. 584.) Dr. Maggard reported that Blackwell's limitations were based on his symptoms resulting from multiple hernias and abdominal pain. (R. at 582.)

In February 2005, Blackwell reported that his pain was worsening. (R. at 614.) In May 2005, Blackwell complained of right shoulder pain and episodes of bed-wetting. (R. at 607.) Examination revealed that Blackwell's neck was supple, he had full range of motion and no cervical lymphadenopathy. (R. at 607.) Blackwell had full range of motion in all extremities. (R. at 607.) On August 17, 2005, Blackwell reported that medication controlled his edema. (R. at 603.)

On March 7, 2006, Dr. Maggard completed another physical assessment indicating that Blackwell could both occasionally and frequently lift and carry items weighing less than 10 pounds. (R. at 621-23.) He reported that Blackwell could stand, walk and/or sit less than two hours in an eight-hour workday. (R. at 621.) He reported that Blackwell would need to alternate sitting, standing and walking to relieve discomfort every 10 to 30 minutes. (R. at 621-22.) Dr. Maggard reported that Blackwell could sit for up to 15 minutes and stand for up to 10 minutes before needing to change positions. (R. at 622.) He also reported that Maggard would need to walk for up to 10 minutes every half-hour. (R. at 622.) Dr. Maggard noted that Blackwell

would need to frequently lie down at unpredictable intervals. (R. at 622.) He reported that Blackwell should never twist, stoop, crouch, climb stairs or ladders and that he was limited in his ability to reach, to handle, to push or to pull. (R. at 622-23.) Dr. Maggard reported that Blackwell should avoid even moderate exposure to extreme cold, wetness, humidity, noise and fumes, odors, dusts, gases, and poor ventilation and that he should avoid all exposure to extreme heat, machinery and heights. (R. at 623.) He reported that Blackwell would be absent from work more than three times a month due to his impairments. (R. at 623.) He based these findings on Blackwell's chronic abdominal pain and multiple surgeries. (R. at 622.)

Blackwell was treated at the Veterans Administration Medical Center, ("VAMC"), from March 22, 2006, through March 13, 2008, for back pain, abdominal pain, diabetes mellitus, hypertension, high cholesterol, depression, post-traumatic stress disorder, ("PTSD"), anxiety and Crohn's disease. (R. at 663-701, 719-47, 766-814, 830-982.) On January 29, 2008, Blackwell was diagnosed with anxiety, not otherwise specified, and depression, not otherwise specified.[9] (R. at 729-33.) On February 9, 2008, a number of tests were performed, including the Beck Depression Inventory-II, ("BDI-II"), PTSD Checklist-Civilian Version, Beck Hopelessness Scale and Beck Anxiety Inventory. (R. at 698-99.) These tests indicated that Blackwell suffered from severe depression and anxiety. (R. at 699.) On February 19, 2008, Blackwell underwent a diabetic eye examination, which showed astigmatism, myopia and possible glaucoma. (R. at 683-85.) That same day, Blackwell underwent a psychiatric evaluation. (R. at 686-97.) Blackwell's mood was described as anxious

[9]Blackwell stated that he had received counseling from Princeton Veterans Center, however, there are no records of such counseling contained in the record. (R. at 729.)

-14-

and depressed. (R. at 686.) His affect was appropriate. (R. at 686.) Blackwell's thought process and content were logical and appropriate. (R. at 686.) His immediate and remote memory was grossly intact. (R. at 686.) Blackwell complained of anger, symptoms of PTSD and depression, stating that he had suffered with these symptoms for the previous five years; however, his symptoms had worsened significantly since November 2007. (R. at 687.) Blackwell identified three traumatic events while stationed in Kuwait.[10] (R. at 688.) It was reported that Blackwell met the full criteria for PTSD and depression. (R. at 689.) Blackwell reported that when he was a teenager, he would hurt himself by cutting, branding and/or burning. (R. at 694-95.) He also reported that he had thought about harming or killing a specific person within the previous month. (R. at 695.) Blackwell was diagnosed with chronic PTSD and recurrent, moderate major depressive disorder. (R. at 696.) Blackwell's then-current Global Assessment of Functioning, ("GAF"),[11] score was assessed at 45.[12] (R. at 696.) His level of impairment was considered "severe."[13] (R. at 696.)

---

[10]Blackwell stated that he had witnessed burned vehicles and charred bodies. (R. at 688.) He stated that he and others had been surrounded by persons trying to surrender, and he reacted with helplessness and the feeling of being outnumbered. Finally, he stated that he was involved in a fire fight, in which he took fire. (R. at 688.) He stated that he reacted with fear, horror and anger. (R. at 688.)

[11]The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994).

[12]A GAF score of 41-50 indicates that the individual has "[s]erious symptoms ... OR any serious impairment in social, occupational, or school functioning ...." DSM-IV at 32.

[13]Blackwell did not keep his appointments with Gilbert T. Vance, Ph.D., a resident in psychology at the VAMC on February 27, 2008; March 6, 2008; March 10, 2008; and March 18, 2008. (R. at 674, 676, 679, 921.)

On March 13, 2008, Blackwell weighed 307.4 pounds. (R. at 667.) It was reported that his diabetes and hypertension were controlled. (R. at 668.) He was instructed to lose weight. (R. at 668.) He was prescribed clonazepam and quetiapine. (R. at 776-77.) On March 19, 2008, Blackwell saw Vance. (R. at 920-21.) Vance reported that Blackwell was pleasant, cooperative, alert and fully oriented. (R. at 920.) Blackwell reported stress due to losing his home. (R. at 920.) On March 26, 2008, Blackwell reported that he had benefitted from therapy. (R. at 918.) Blackwell did not attend his next scheduled appointment. (R. at 917.) On April 14, 2008, a CT scan of Blackwell's pelvis and abdomen showed a short segment of probable stricture in the distal sigmoid colon, less likely secondary to peristalsis, and gallstones with no evidence of acute cholecystitis. (R. at 861-63.) On April 22, 2008, a colonoscopy showed a polypoid lesion suggestive of a lipoma on the terminal ileum and a small ulcer through which the scope could not pass. (R. at 897-98.) That same day, Blackwell's GAF score was assessed at 45. (R. at 912.) On May 2, 2008, a small bowel series revealed slight bowel wall thickening and a short segment of ileum with an altered mucosa pattern that did not appear to be widespread mucosal disease. (R. at 891-92.) On May 19, 2008, surgery was recommended to remove the distal part of the terminal ileum where the stricture was located. (R. at 888-89.)

On October 5, 2008, Blackwell was seen at the emergency room at Tazewell Community Hospital with complaints of chronic diarrhea, abdominal swelling and bilateral lower extremity swelling. (R. at 996-1005.) Blackwell's mental examination was normal. (R. at 997.) He was diagnosed with edema, questionable protein and Crohn's disease. (R. at 998.)

## III. Analysis

The Commissioner uses a five-step process in evaluating DIB claims. *See* 20 C.F.R. § 404.1520 (2010); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if not, whether he can perform other work. *See* 20 C.F.R. § 404.1520. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 404.1520(a) (2010).

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. § 423(d)(2)(A) (West 2003 & Supp. 2010); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

As stated above, the court's function in the case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. The court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided his decision is supported by

substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

By decision dated October 24, 2008, the ALJ denied Blackwell's claim. (R. at 13-24.) The ALJ found that the medical evidence established that Blackwell suffered from severe impairments, namely Crohn's disease, a back disorder and obesity, but he found that Blackwell did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 16, 18.) The ALJ also found that Blackwell had the residual functional capacity to perform a limited range of sedentary work. (R. at 19.) The ALJ found that Blackwell was unable to perform any of his past relevant work. (R. at 22.) Based on Blackwell's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that jobs existed in significant numbers in the national economy that Blackwell could perform. (R. at 22-23.) Thus, the ALJ found that Blackwell was not under a disability as defined under the Act and was not eligible for benefits. (R. at 23-24.) *See* 20 C.F.R. § 404.1520(g).

In his brief, Blackwell argues that substantial evidence does not exist to support the ALJ's residual functional capacity finding. (Brief In Support Of Plaintiff's Motion For Summary Judgment And Remand For Consideration Of Additional Evidence, ("Plaintiff's Brief"), at 12, 16-20.) Blackwell argues that the ALJ erred by failing to find that he suffered from a severe mental impairment. (Plaintiff's Brief at 12-15.) Blackwell also argues that the Appeals Council erred by failing to remand his case to

the ALJ for further consideration of new medical evidence. (Plaintiff's Brief at 12, 20-21.)

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. This court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided his decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co.*, 131 F.3d at 439-40.

Blackwell argues that substantial evidence does not exist to support the ALJ's residual functional capacity finding. (Plaintiff's Brief at 12, 16-20.) In particular, Blackwell argues that the ALJ erred by failing to find that he suffered from a severe mental impairment. (R. at 12-15.) The Social Security regulations define a "nonsevere" impairment as an impairment or combination of impairments that does not significantly limit a claimant's ability to do basic work activities. *See* 20 C.F.R. § 406.1521(a) (2010). Basic work activities include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out and remembering job instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations and dealing with changes in a routine work setting. *See* 20 C.F.R. § 406.1521(b) (2010). The Fourth Circuit held in *Evans v. Heckler*, that, "[a]n impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the

individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." 734 F.2d 1012, 1014 (4th Cir. 1984) (quoting *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)) (emphasis in original).

The ALJ found that Blackwell did not suffer from a severe mental impairment. (R. at 18.) The ALJ noted that, "[a]lthough his mental impairments (PTSD, depression, and anxiety) do appear to have caused significant functional limitations, the claimant did not begin treatment until January 2008 at Salem VAMC and he has not followed up with regular treatment since February 2008." (R. at 18.) The ALJ also noted that Blackwell's mental impairments had not persisted for 12 consecutive months or more and did not, therefore, meet the durational requirement for a severe impairment. (R. at 18.) Based on my review of the record, I do not find that substantial evidence exists to support the ALJ's finding that Blackwell did not suffer from a severe mental impairment.

The record shows that Blackwell was prescribed Seroquel[14] for depression in May 2007. (R. at 748-49, 757.) On June 18, 2007, Dr. David R. Carr, D.O., diagnosed Blackwell with depression and prescribed Xanax and Seroquel. (R. at 750, 756.) In October 2007, Blackwell continued to be prescribed Seroquel. (R. at 751.) In January 2008, Blackwell was diagnosed with anxiety, not otherwise specified, and depression, not otherwise specified. (R. at 729-33.) In February 2008, a number of tests were performed, which showed that Blackwell suffered from severe depression and anxiety.

---

[14]Seroquel is an atypical antipsychotic agent indicated for Bipolar Disorder, including Bipolar Depression, Bipolar Mania, Bipolar Maintenance and Schizophrenia. *See* PHYSICIANS' DESK REFERENCE, ("PDR"), 750 (64th ed. 2010).

(R. at 698-99.) Blackwell was diagnosed with chronic PTSD and recurrent, moderate major depressive disorder. (R. at 696.) He had a then-current GAF score of 45, indicating serious impairments. (R. at 696, 912.) In March 2008, Blackwell was prescribed clonazepam[15] and quetiapine.[16] (R. at 776-77.) In addition, the medical records presented to the Appeals Council from the VAMC, indicate that Blackwell continued to take Seroquel and clonazepam. Based on this, I do not find that substantial evidence exists to support the ALJ's finding that Blackwell did not suffer from a severe mental impairment.

Blackwell also argues that the Appeals Council erred by failing to remand his case to the ALJ for further consideration of new medical evidence. (Plaintiff's Brief at 12, 20-21.) The Commissioner argues that this case should not be remanded for consideration of Blackwell's new evidence because it is neither "new" nor "material." (Defendant's Memorandum In Support Of His Motion For Summary Judgment, ("Defendant's Brief"), at 34-35.) In particular, the Commissioner argues that this evidence does not relate to the relevant time period. Based on my review of this evidence, I reject this argument, and I recommend that the court remand Blackwell's claim to the Commissioner for consideration of this evidence.

Section 405(g) of Title 42 states that "[t]he court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence that is material, and that there is good cause

---

[15]Clonazepam, also known as Klonopin, is indicated for the treatment of panic disorders. *See* PDR at 2855.

[16]Quetiapine is also known as Seroquel. *See* PDR at 750.

for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C.A. § 405(g) (West 2003 & Supp. 2010.) For the evidence to merit remand, it must be new and material, and Blackwell must present good cause for his failure to incorporate the evidence in the record of the prior proceeding. *See* 42 U.S.C.A. § 405(g); *see also Wilkins*, 953 F.2d at 96; *Arthur v. Barnhart*, 211 F. Supp. 2d 783, 787-88 (W.D. Va. 2002). Evidence is new if it is not duplicative or cumulative, and it is material if it creates a reasonable possibility that it would have changed the outcome. *See Wilkins,* 953 F.2d at 96 (internal citations omitted).

Based on my review of the evidence submitted in Docket Item No. 22, I find that this evidence is new and material and that good cause exists for Blackwell's failure to incorporate this evidence into the record before the Commissioner. In particular, the medical records are from Blackwell's admission to VAMC for congestive heart failure. It was reported that his congestive heart failure was attributed to his history of morbid obesity as well as questionable sleep apnea. That being the case, I find that this evidence is material to Blackwell's prior conditions. I also find that the evidence is new and that Blackwell could not produce it earlier than it was generated. Therefore, I will recommend that the court vacate the Commissioner's decision denying benefits and remand this case to the Commissioner for consideration of this evidence.

Given the above recommended disposition, I find it unnecessary to decide whether substantial evidence exists to support the ALJ's physical residual functional capacity finding.

# PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1.  Substantial evidence does not exist to support the ALJ's finding that Blackwell did not suffer from a severe mental impairment;

2.  Substantial evidence does not exist to support the ALJ's finding that Blackwell was not disabled under the Act; and

3.  The additional medical evidence tendered by Blackwell to the court is new and material and should be considered by the Commissioner on remand.

# RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Blackwell's motion for summary judgment, deny the Commissioner's motion for summary judgment, vacate the decision of the Commissioner denying benefits and remand this case to the ALJ for further consideration consistent with this Report and Recommendation.

# <u>Notice to Parties</u>

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(C) (West 2006 & Supp. 2010):

Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file

written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED:    November 12, 2010.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE